Eugene R. Payne et al. *v.* School District of Coudersport Borough, A. B. Mann, President, the County of Potter and Charles Coats, County Treasurer, Appellants.

*Constitutional law—Statutes—Title of act—Act of Feb.* 8, 1871.

The act of Feb. 8, 1871, sec. 2, P. L. 31, entitled "An act to enable the board of school directors of the borough of Coudersport, in the county of Potter, to establish and maintain a graded school," and providing "that the whole of the territory contained in the East Fork road district, in the county of Potter, is hereby annexed to the said school district of Coudersport, and the board of school directors of said district are authorized and empowered to levy and collect a school tax upon the assessed valuation of all property in said territory, the same as they levy and collect the property within the original bounds of said school district," is defective in title and repugnant to the eighth section of the eleventh article of the constitution of Pennsylvania in force at the time of the passage of the act.

Argued May 7, 1895. Appeal, No. 80, Jan. T., 1894, by defendants, from decree of C. P. Potter Co., June T., 1894, No. 353, on bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain the sale of certain lands described in the bill for arrears of school taxes, by the county treasurer for the benefit of the school district of Coudersport borough, and for a decree that the defendants refund to the plaintiffs the sum of $925.65 school taxes, unlawfully collected, and for further relief.

A preliminary injunction was granted. An issue being joined, the cause was tried before NOYES, P. J., specially presiding, who filed the following opinion:

" The plaintiffs are the owners of some 14,000 acres of land described in the bill, and situate in the township of Eulalia, county of Potter, and state of Pennsylvania, and distant some sixteen miles from the borough of Coudersport. By virtue of the provisions of the act of Feb. 8, 1871, school taxes and taxes for school buildings were assessed against said lands by authority of the school directors of Coudersport borough school district for the years 1892 and 1893, amounting to $1,524.60. These taxes the plaintiffs have refused to pay, alleging that they are without authority of law, and the defendant Charles Coats, the treasurer of the county, has caused the lands to be advertised for sale. The lands of the plaintiffs are within the boundaries of the East Fork road district, as they are defined in an act, entitled ' An act erecting the south part of Eulalia township, in the county of Potter, into a separate road district,' approved April 3, 1862. They are also among the lands enumerated in an act, entitled ' An act to attach certain lands in Potter county to Coudersport school district for school purposes,' approved April 2, 1867, which last mentioned act was repealed by the act of May 26, 1891, P. L. 132.

" In addition to the taxes above referred to, there was assessed against the lands of the plaintiffs described in the bill for the benefit of the said school district, defendant, for the year 1893, school bond taxes amounting to $925.65. At the request of the plaintiffs, the defendant Coats, the county treasurer, sent to the plaintiffs, before any payment of taxes, a statement of all the taxes assessed against their lands in tabular form, which was marked by the stenographer ' Plaintiffs' Exhibit " A," ' and is made part of this finding. The various kinds of taxes were set opposite the numbers of the several warrants, under appropriate headings, as ' county tax,' ' school tax,' etc. One of these

headings was the word 'bond,' without more. The plaintiffs, not intending to pay any school taxes, included the taxes under this head in their check to the treasurer, and had no knowledge that the taxes under that head were in fact school taxes, until the treasurer returned his receipt, in which the heading was altered to read ' school bond,' and the taxes were so designated in the body of the receipt. The taxes so unintentionally paid were the school bond taxes above referred to, and amounted to $925.65.

" It is conceded that a threatened sale of lands for taxes, where the power attempting to tax has no jurisdiction, or where the taxing authorities are acting contrary to law, will be restrained by injunction : St. Clair's School Board's App., 74 Pa. 252; Miller v. Gorman, 38 Pa. 309; Markoe v. Hartranft, 6 Am. Law Reg., (N. S.), 487. The plaintiffs contend that the second section of the act of Feb. 8, 1871, P. L. 31, which is the only authority for the assessment of the taxes in question, is in conflict with the eighth section of the eleventh article of the constitution of Pennsylvania, in force at the time of its passage, and hence void.

" The section in question is as follows : ' That the whole of the territory contained in the East Fork road district, in the county of Potter, is hereby annexed to the said school district of Coudersport, and the board of school directors of said school district are authorized and empowered to levy and collect a school tax upon the assessed valuation of all property in said territory, the same as they levy and collect upon the property within the original bounds of said school district.' The act from which the above section is quoted is entitled ' A supplement to an act entitled " An act to enable the board of school directors of the borough of Coudersport, in the county of Potter, to establish and maintain a graded school.' " The East Fork road district was established by an act of assembly approved April 3, 1869, P. L. 706, entitled ' An act erecting the south part of Eulalia township, in the county of Potter, into a separate road district.' This act provides that certain warrants, including the lands of the plaintiffs in Eulalia township, together with certain other lands in Summit, Abbott and West Branch townships, shall constitute a separate road district, to be known as the East Fork road district.

" It is to be noted that the lands in Eulalia township, affected by the second section of the act of Feb. 8, 1871, had been already 'attached' to Coudersport for school purposes, by the act of April 2, 1867, with like power of taxation as is given in the later act. The act of 1867 was repealed by title in 1891. Either the legislature has accomplished absolutely nothing by this repeal, or it must be construed to abolish the law which it repealed, though contained in a different act from that cited. This construction would repeal the identical law which is contained in the act of 1871. But as the language of the repealing statute is plain, we have no warrant for resorting to construction. We must assume, therefore, even against reason, that the legislature intended precisely what it did, viz, to repeal a law already repealed and supplied by the act of 1871.

" The constitutional provision, which it is alleged this statute violates, is identical in meaning with the third section of the third article of the constitution of 1874. To determine whether an act offends against this provision, we must inquire whether it contains more than one subject; and if not, whether the single subject of the act is clearly expressed in its title. The purpose of the first requirement was to prevent the passage of 'omnibus bills,' or, as it is expressed in the corresponding section of the constitution of New Jersey, 'to avoid improper influences, which may result from intermixing in one and the same act, such things as have no proper relation to each other.' Few bills are so elementary in character that they may not be subdivided under several heads; and no two subjects are so wide apart that they may not be brought into a common focus, if the point of view be carried back far enough. The quotation from the constitution of New Jersey furnishes the proper light in which to define the word 'subject.' Those things which have a 'proper relation to each other; which fairly constitute parts of a scheme to accomplish a single general purpose,' 're-late to the same subject,' or 'object.' And provisions which, have no proper legislative relation to each other and are not part of the same legislative scheme, may not be joined in the same act. What was the legislative subject of the act of the 13th of April, 1869, to which the bill in question is a supplement? The title answers, 'To enable the board of school directors of Coudersport, in the county of Potter, to establish and maintain a

graded school.' To this end, its first section authorizes the trustees of the Coudersport academy to convey all its property to the school directors of Coudersport borough, to be used by them for the purpose of establishing and carrying on a common or graded school. The second section repeals certain laws of no moment here. The third authorizes the levy of two per cent upon the valuation of all the taxable property in the district. The supplement in question, in the first section, provides that the school directors may charge tuition in the high school department of the graded school, and in all of the departments except to pupils residing in Coudersport borough, and Eulalia township. And the second section is the one above quoted, annexing the East Fork road district to Coudersport for school purposes. The greater part of the territory contained in the East Fork road district had been, as we have said, attached to Coudersport for school purposes, by a special act of assembly, in 1867. This supplement, therefore, covers actually the subject-matter of two existing acts, that of 1867, and the act to which it was a supplement. Provisions respecting the charge for the tuition of the graded school in Coudersport, and provisions attaching the territory to the school district of Coudersport, seem to have no proper relation. But it is argued with great force and ability, by the learned counsel for the defendants, that the means by which the general purpose of an act of assembly is to be accomplished are included within the subject of the act, and that they need not be specified in the title. This is undoubtedly a correct principle, and, if applicable here, will sustain the provisions of the act attacked by the plaintiffs. But there is in the section in question no allusion to the graded school; nor is there in the original act any reference to the territory outside the boundaries of the Coudersport school district. The taxes to be levied on the lands in East Fork are not directed to be applied to the graded school, and the directors may or may not use them for that purpose. Pupils resident in a portion of the annexed territory, viz, in Abbott, Summit and West Branch townships, are expressly excluded by the terms of the act from all benefit of the graded school, except upon payment of tuition, in the same manner as pupils from other school districts. Doubtless the increase in the amount of taxable property, resulting from annexation of the East Fork

road district, did facilitate the maintenance of the graded school in Coudersport. But can we regard that merely as a means to the end (the maintenance of the graded school in Coudersport) which is broader in its scope than the original object? If to enable the school directors of Coudersport to maintain a graded school they had been authorized to administer all of the school affairs in the county of Potter, such a regulation could hardly be justified as merely means to the end proposed by the bill. Where the means adopted to accomplish the purpose stated in the title of an act is itself a substantive regulation, affecting greater territory and broader interests than are disclosed by the title, the rule invoked by the defendant is not applicable.

" The original act of April 13, 1869, and the first section of the supplement of Feb. 8, 1871, relate only to Coudersport, and to a single school in that borough. The second section of the supplement relates to Coudersport, and the East Fork road district, which includes a part of three townships never theretofore connected in any way with Coudersport school district, and it affects not merely the graded school, but all the schools within the territory mentioned. We are of opinion, therefore, that this section is in violation of the constitutional prohibition as containing more than a single subject. But if it may be fairly said that the two subjects are so related that they might be embraced within a single act, it is clear that the second provision of the constitution has not been complied with. For the title does not set forth any subject sufficiently broad to cover both of these provisions, but merely one of them, viz, that relating to the graded school.

" The title to a bill need not be an index to its contents, but it must be so broad as to cover all the provisions of the act, and not merely some of its subdivisions. One of the tests applied in the cases, to determine the sufficiency of a title to a bill, is the inquiry whether it fairly gives notice by its terms, to all persons interested, of the subject-matter of the act. If by its title it appears to affect only the residents of a certain locality, while in the body of the bill there are provisions affecting other territory, it has been held that the title is misleading and the act unconstitutional : Beckert v. The City of Allegheny, 85 Pa. 191; Philadelphia v. Ridge Avenue Passenger Railway Co., 142 Pa. 484; Ridge Avenue Passenger Railway

Co. v. Philadelphia, 124 Pa. 223. Where the title of a bill imports one subject, and the bill itself shows an additional subject to be its purpose, the title is misleading and the act unconstitutional: Rogers v. The Mfrs. Imp. Co., 109 Pa. 109; Dorsey's App., 72 Pa. 192; Hatfield v. The Commonwealth, 120 Pa. 395. The title of this bill relates only to Coudersport. Assuming that the act of 1867 had made the warrants in Eulalia township part of Coudersport's school district, the title gives no notice that any legislation affecting the inhabitants of Summit, Abbott or West Branch township was intended. If the act was unconstitutional as to those townships, it cannot be sustained as to Eulalia, for the provisions of the second section are not severable. We cannot assume that the legislature would have annexed the warrants in Eulalia alone.

"In the application of plain and unquestioned principles to a great variety of cases, some conflict naturally arises. The judges who decided the later cases had the advantage of a broader view than those who decided the earlier ones immediately following the adoption of that provision of the constitution. The case of Blood v. Mercelliot, relied upon by the defendants, 53 Pa. 391, was one of the earliest decided after the adoption of this provision of the constitution. It has been repeatedly declared to be upon the very border line; and from the remarks which have been made concerning it in subsequent cases, it is by no means certain that the decision would be repeated were precisely the same facts to be again presented. But it is not decisive of the question before us at all events, while the later cases seem to us to clearly point to the unconstitutionality of the section under consideration.

"As to the right of the plaintiffs to recover back the taxes paid inadvertently, the law seems quite clear. The presumption is that the taxes paid to public officers are applied to public purposes, and taxes so paid cannot be recovered back merely because the law under which they are levied is unconstitutional: Peeble v. The City of Pittsburg, 101 Pa. 304. Where the payment is exacted by duress of the person, or distraint of goods, and is made under protest, thus giving notice to the officers that it will be contested, the law will permit taxes illegally collected to be recovered back ; but it never permits such a recovery where the payment was voluntary.

"The facts in this case constitute a voluntary payment. There was no duress and no act of the officers which can be justly said to have misled the plaintiffs. The word 'bond' at the head of the column, in the statement of taxes furnished, simply failed to give information sufficient to enable them to determine whether the taxes in that column were school taxes or not. It furnished no reason for presuming that they were not school taxes, and conveyed no erroneous information. Without making further inquiry, the plaintiffs saw fit to pay the taxes, and this was plainly a voluntary payment.

"But even if otherwise entitled to recover back the taxes paid, the plaintiffs have a complete remedy at law; and it is a grave question whether this claim is so related to the controversy in equity as to justify the disposition of it in this suit, as a part of that controversy. Our conclusions of law are the following:

"1. That the second section of the law, entitled 'A supplement to an act, entitled "An act to enable the board of school directors of the borough of Coudersport, in the county of Potter, to establish and maintain a graded school, approved April 13, 1869,"' approved Feb. 8, 1871, is unconstitutional and void.

"That the assessment of taxes upon the lands of the plaintiffs, described in the bill, by the directors of the school district of Coudersport, was without authority of law. And the threatened sale of said lands by the treasurer of the county would be illegal.

"3. That the payment of $925.65 of school bond taxes, by the plaintiffs, although unintentional, was voluntary, and such payment cannot be recovered back in this suit.

"4. That the plaintiffs are entitled to the injunction prayed for in the bill.

"Upon the whole case, it is considered that the injunction now in force be made absolute and perpetual; that the other relief prayed for in the bill be denied, and that the costs of this proceeding be paid by the school district of Coudersport borough."

*Error assigned* was above decree.

*H. C. Dornan,* of *Dornan & Ormerod* and *C. L. Peck, Larrabee, Lewis & Leonard* with them, for appellants, cited on the question of the title of the act: State Line & Juniata R. R. Co.'s App., 77 Pa. 429; In re Borough of Pottstown, 117 Pa. 538; Millvale Borough v. R. R., 131 Pa. 1; In re Church St., 54 Pa. 353; Lea v. Bumm, 83 Pa. 237; Clearfield County v. Cameron Twp. Sch. Div., 135 Pa. 86; Washington Borough v. McGeorge, 146 Pa. 248; Kelley v. Mayberry Twp., 154 Pa. 440; Holl v. Deshler, 71 Pa. 299; Southwestern Turnpike Co. v. Fletcher, 104 Ind. 97.

The legal rule is to sustain that part of the act of which the title gives notice, though the rest be unconstitutional: Dewhurst v. City of Allegheny, 95 Pa. 437; Allegheny City v. Moorehead, 80 Pa. 118; Allegheny County Home's App., 77 Pa. 77; Rothermel v. Meyerle, 136 Pa. 250; Wynkoop v. Cooch, 89 Pa. 450; McGee's App., 114 Pa. 470; Mauch Chunk v. McGee, 81 Pa. 433; Smith v. McCarthy, 56 Pa. 359; Hatfield v. Commonwealth, 120 Pa. 395; Dorsey's App., 72 Pa. 192; Carothers v. Phila., 118 Pa. 468; LaPlume Borough v. Gardner, 148 Pa. 192; Brown's Estate, 152 Pa. 401; Myers et al. v. Commonwealth, 110 Pa. 217; People v. Lawrence, 41 N. Y. 137; Mahomet v. Quackenbush, 117 U. S. 509; McArthur v. Nelson, 81 Ky. 61; Firemen's Association v. Lounsbury, 21 Ill. 511; Hope v. Gainesville, 72 Ga. 416; Pa. R. R. Co. v. Riblet, 66 Pa. 164; Eby's App., 70 Pa. 311; Coosaw Mining Co. v. State, 144 U. S. 550; Cochran v. Library Co., 6 Phila. 492; Mauch Chunk v. McGee, 81 Pa. 433; Commonwealth v. Butler, 99 Pa. 535; Bosidere v. Bank, 29 Am. Dec. 453.

*Henry C. McCormick, James B. Benson, L. B. Seibert* and *Seth T. McCormick* with him, for appellee.—It will be noted that the act of 1871 is a supplement to the act of April 13, 1869. We are therefore construing the act of 1869, writing into it section 2 of the act of 1871: Craig v. Church, 88 Pa. 42; Philadelphia v. Ridge Ave. R. R., 142 Pa. 484; Phœnixville Road, 109 Pa. 44. The title must be so certain as not to mislead: Dorsey's App., 72 Pa. 192; Rogers v. Mfg. Imp. Co., 109 Pa. 109; Union Pass. Ry. Co.'s App., 81* Pa. 91; Beckert v. Allegheny, 85 Pa. 191; Penna. R. R. v. Riblet, 66 Pa. 164.

PER CURIAM, May 20, 1895:

There was no error in entering the decree complained of; and for reasons given in the opinion of the court below it should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellants.