Yardley Mills Co., Inc., et al. *v.* Bogardus et al.

582

Argued April 22, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. A. Schnader,* with him *Clarence J. Buckman,* for plaintiffs.

*Grover C. Ladner,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for J. F. Bogardus and Warren Van Dyke, defendants.

*Wm. Jay Turner,* with him *S. D. Matlack,* for Delaware Division Canal Co., defendant.

*Joseph Sharfsin,* City Solicitor, with him *G. Coe Farrier* and *Ernest Lowengrund,* Assistant City Solicitors, for City of Philadelphia, intervenor.

OPINION BY MR. JUSTICE DREW, May 25, 1936:

Plaintiff taxpayers bring this class bill against the secretary of forests and waters and the secretary of high-

ways of the Commonwealth, and The Delaware Division Canal Company, to prevent the waste and abandonment of a portion of the Pennsylvania Canal, known as the Delaware Division, and the conveyance thereof by the defendant state officers to the defendant company. Petitions by plaintiffs that this court take original jurisdiction and by the City of Philadelphia for leave to intervene were duly granted, and the cause is now before us for decision on bill and answer. The issue is the constitutionality of the Act of June 26, 1931, P. L. 1387. Plaintiffs' claim depends upon its validity, whereas the defendant state officers and the city join in asserting its unconstitutionality.

In pursuance of that act, the defendant company, by deed dated September 30, 1931, conveyed to the Commonwealth all of its interest in the portion of the canal and canal lands between Raubsville and Yardley, consisting of approximately 40 of the canal's 60 miles in length. The deed reserved to the company the right to construct pipes and mains under the towing path for the transportation of water, and further to construct under the canal bed and berm bank such pipes as might be required for the supply of water in accordance with the company's existing or future agreements, provided that such construction should not mar the beauty of the landscape or interfere with the use of the canal bed and bank. A similar reservation was made for the construction of pipes necessary for the taking of water from the canal by persons authorized by the company to do so. The Commonwealth agreed not to interfere with the exercise of the rights and privileges so reserved. By a separate agreement between the Commonwealth and the company, bearing the same date as that of the deed, it was provided that the company should furnish water for the maintenance of the canal between Raubsville, the upper end of the portion conveyed, and a lock at New Hope, for five years from July 1, 1931, and that no charge should be made for such water during the months from

584

April to November in that period, while during the remaining months, and after the expiration of the five-year term, water was to be furnished at rates to be agreed upon. It was further agreed that during the five-year period the company should be entitled to fulfill its existing and future water supply and power agreements from water flowing in the canal, and that the Commonwealth would maintain the canal in good condition so long as the company furnished water without charge. Finally, the Commonwealth was obligated to provide from the Delaware River, by means of a lock at New Hope, enough water to maintain between that point and the end of the canal at Bristol a flow sufficient to enable the company to fulfill its agreements, and, upon the Commonwealth's failure to do so, the company was empowered to operate the lock for that purpose.

In October, 1931, the department of highways transferred the property thus acquired to the department of forests and waters, with certain reservations for highway purposes. The latter department thereupon established a state park on the land. On October 9, 1935, the attorney general declared the Act of 1931 to be unconstitutional, and so informed the secretary of forests and waters, who, with the secretary of highways, thereupon advised the defendant company of that fact and offered to deliver to it possession of the property and execute a quit-claim deed. The company was further told that it would be expected to resume maintenance of the canal as a waterway, in accordance with the duties imposed upon it by the Act of April 21, 1858, P. L. 414, as grantee of the canal from the Sunbury and Erie Railroad Company. Forfeiture of the defendant company's property in the canal was threatened if it failed to do so, and January 27, 1936, was fixed as the date of the Commonwealth's withdrawal from the canal. A few days before the withdrawal, the defendant company petitioned the Court of Common Pleas of Dauphin County for a writ of alternative mandamus to compel the defendant state offi-

cers to repair the canal in accordance with the agreement of 1931. Thereupon a writ was issued as prayed, to which return was made on the following February 5th. The present bill was filed on March 11th, during the pendency of the mandamus action.

It must be noted that the deed to the Commonwealth is not in conformity with the Act of 1931, supra, under the authority of which it was executed. Section 1 of the act provides for the relief of the duties of a canal company affected by the act after it had conveyed to the Commonwealth "all of its right, title, and interest" in and to the canal lands or parts thereof. The act thus contemplated a conveyance of a title absolute in quality, in so far as the company was able to do so—in other words, the company was expected to retain no interest in whatever portions of the land were transferred. The *quantity* of land to be conveyed was to be agreed upon, but the *quality* of title to the land transferred was to remain unimpaired and was not to be reduced by the conveyance—an unclouded fee simple absolute, if the company had such a title to transfer. In the deed, however, the defendant company did not convey all of its interest in the land described, but reserved important easements, for the construction of pipes and mains under the canal bed, berm bank and towing path, to be used for its own purposes. That these easements constituted a very substantial interest in the land and materially impaired the quality of the Commonwealth's title is beyond dispute. The deed was thus not in accord with the act, and might very well be struck down for that reason. But in any event we are of the opinion that the act itself must fall.

The attorney general's conclusion that the act was invalid was based upon section 3, of article III, of the Constitution, providing that "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." He was of the opinion that the act contained at least three separate subjects, none of them germane to the

others. Section 1 of the act[1] was, in his view, concerned with the relief of such canal companies as have acquired waterways constructed by the Commonwealth from the duties and obligations imposed upon them to keep in repair and maintain such waterways for transportation purposes after conveyance thereof to the Commonwealth. On the other hand, section 2, in the opinion of the attorney general, contained a grant to such company of the right to sell or otherwise dispose of its waters for domestic, manufacturing and commercial purposes,

---

[1] "An act relieving canal corporations, owning any canals or other artificial waterways constructed by the Commonwealth as parts of its public works, from the obligation to maintain the same for transportation purposes, under certain conditions; and authorizing such corporations to use, sell, or lease the waters of such canals and waterways for domestic, manufacturing, commercial, and other lawful purposes, and to use, sell, lease, or otherwise dispose of the whole or any part of the lands occupied by such canals or waterways, and the property appurtenant thereto; and authorizing the department of highways to acquire, by gift, all or any part of such lands, and to sell or otherwise dispose of all or any part of such lands as shall not be needed for highway purposes.

"Section 1. Be it enacted, etc., That any canal corporation, organized and existing under the laws of this Commonwealth, which has heretofore acquired, directly or indirectly, any canal or other artificial waterway constructed by the Commonwealth as a part of its public works, shall be relieved from any and every obligation and duty, at law or in equity, to maintain or keep in repair for transportation purposes such canal or waterway, or any part thereof, after such corporation shall have conveyed to the Commonwealth all of its right, title, and interest in and to such part or parts of the lands occupied by such canal or waterway as shall be mutually agreed upon by such canal corporation and the department of highways, with the approval of the governor.

"Section 2. Any such corporation may, from time to time, use, sell, lease, or otherwise dispose of any portion or the whole of the waters of such canal or waterway for domestic, manufacturing, commercial, and other lawful purposes, whether the same shall flow in the canal itself, or in mains or pipes constructed or laid along the right of way conveyed to the Commonwealth as hereinbefore provided, and, from time to time, may use, sell, and convey in fee simple, lease, or otherwise dispose of that portion of the lands

whether the waters should flow in the canal itself or in the mains or pipes along the right of way. This section, the attorney general found, involved an increase of the charter powers of the company, and in effect converted it from a canal company to a water supply company. Furthermore, a third subject, according to him, was dealt with in section 3 of the act, which authorized the Commonwealth, acting through the department of highways, to acquire the canal lands by gift, and to sell or otherwise dispose of portions of them on terms approved by the governor and deposit the proceeds in the motor license fund. The attorney general concluded that the latter provision, as to deposit of the proceeds, was the equivalent of an appropriation.

We agree with the attorney general that the act contains more than one subject and must therefore be held invalid. The first section clearly effects the removal of the duties of maintenance previously imposed upon the canal companies subject to the act (of which there was in fact only one, the defendant company). Section 2, however, is concerned with a wholly different subject, the power of such companies to dispose of waters from the canal or adjoining pipes, and of canal lands and other appurtenant property. Whether this section grants new powers, as the attorney general thought and as the defendant state officers contend, or whether, as plaintiffs claim, it merely reasserts in another form powers which

occupied by such canal or waterway, and the property appurtenant thereto, which shall not be conveyed to the Commonwealth as hereinbefore provided.

"Section 3. The Commonwealth, acting through the department of highways, may acquire, by gift, all or any part of the lands occupied by such canal or waterway, and may thereafter sell or otherwise dispose of any portion of such lands not actually necessary for highway purposes upon such terms and conditions as the governor may approve, and deposit the proceeds in the motor license fund.

"Section 4. This act shall be in full force and effect upon its final enactment."

the company had under previous statutes,[2] the fact remains that it is concerned with the company's power of disposition of waters and lands, and not with the subject contained in the first section. Moreover, the third section relates to neither of these subjects but to an entirely new one, the authorization of the Commonwealth to acquire and sell or otherwise dispose of any portion of the canal lands not necessary for highway purposes, and to deposit the proceeds in the motor license fund. Indeed, the defendant state officers argue, with much persuasiveness, that the latter section is itself concerned with more than one subject, to wit, the authorization of acquisition and the authorization of disposal, together with the provision for deposit of the proceeds. Furthermore, no notice of the latter provision is contained in the title, which nowhere mentions the motor license fund or in any way suggests that the act authorizes the deposit therein of proceeds from the sale of canal lands. We are satisfied that the act violates section 3, of article III, both because of a plurality of subjects and because of a deficiency in the title. Plaintiffs say that "Unless this entire act had been written into the title, it is difficult to conceive how the title could more clearly have indicated the substance of the act." But their very complaint demonstrates the difficulty which arises from an attempt, such as this act is, to deal with several separate subjects in the same act.

It is true that, as was said in *Payne v. School Dist. of Coudersport Boro.,* 168 Pa. 386, at page 389, "Few bills

---

[2] Act of April 21, 1858, P. L. 414 (by which the Sunbury and Erie Railroad Company, as purchaser of the Commonwealth's canals, was given the same rights and privileges as had been previously granted to The Lehigh Coal and Navigation Company under the Acts of March 20, 1818, 7 Sm. L. 86, and of February 13, 1822, P. L. 21; these rights and privileges subsequently passed to The Delaware Division Canal Company, as assignee of the Sunbury and Erie Railroad Company): Act of May 17, 1901, P. L. 261. Cf. Acts of June 2, 1870, P. L. 1318; May 7, 1889, P. L. 104, and March 16, 1899, P. L. 9.

are so elementary in character that they may not be sub-divided under several heads; and no two subjects are so wide apart that they may not be brought into a common focus, if the point of view be carried back far enough." But it was then observed that "provisions which have no proper legislative relation to each other and are not part of the same legislative scheme, may not be joined in the same act." We think the subjects contained in the Act of 1931, supra, have no proper legislative relation to each other and should not be joined. Plaintiffs insist that the act has but one principal subject, the relief of the companies in question from the duties of mainte-nance, and the remaining provisions merely set forth de-tails necessary to carry out the general plan. In the *Payne* case, it was similarly argued that the means by which the general purpose of an act is to be accom-plished are included within the subject of the act. How-ever, in concluding that the act there involved was in-valid because of a plurality of subjects, the court ob-served that, where the means adopted to accomplish the stated purpose is itself a substantive regulation, the rule invoked is not applicable. The same reasoning suffices to answer plaintiffs' contention here. See also *Perkins v. Phila.*, 156 Pa. 554; *Com. v. Humphrey*, 288 Pa. 280. Nor is it possible to rewrite the act or arbitrarily select one from the several subjects treated; "we cannot frame new bills which are constitutional, and substitute them for older ones which are not": *Perkins v. Phila.*, supra, page 562.

The deed and the agreement of September 30, 1931, both recite the Act of 1931 and show on their face that they are executed in pursuance and in consideration of that act. The conveyance by the defendant company to the Commonwealth in the deed, and the relief of the company's duties to maintain the canal, provided in the act, are obviously part of the same scheme. Likewise, the agreement contemplated the transfer which the act and the deed purported to effect. Each was dependent

upon the other, and it therefore follows that the invalidity of the act carries with it the deed and the agreement. The rights and duties of the respective parties with regard to the canal and canal lands and other appurtenant property must accordingly be considered to have the status which would have existed had the Act of 1931 not been passed and the deed and agreement not been executed. Since plaintiffs' prayers for relief are founded upon the act and instruments executed under it, their bill must be dismissed.

Bill dismissed.

Mr. Justice SCHAFFER dissented.