COMMONWEALTH of Pennsylvania

v.

James Howard NEIMAN, Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 11, 2010.

Filed Sept. 8, 2010.

Jeffrey B. Engle, Millersburg, for appellant.

Douglas Taglieri, Asst. Dist. Atty., for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, GANTMAN, PANELLA, DONOHUE, SHOGAN, ALLEN, LAZARUS, and MUNDY, JJ.

OPINION BY FORD ELLIOTT, P.J.:

Appellant, James Howard Neiman, Jr., challenges the judgment of sentence entered following his convictions for numerous sexual offenses against two child victims. We affirm the judgment of sentence.

On March 8, 2007, a jury convicted appellant of one count of involuntary deviate sexual intercourse and multiple counts of aggravated indecent assault, indecent assault, endangering the welfare of children, corruption of minors, and indecent exposure.[1] The charges against appellant arose from the ongoing sexual molestation of his ten-year-old granddaughter and seven-year-old grandniece over a two-year period of time. On September 27, 2007, the trial court sentenced appellant to an aggregate term of 13½ to 27 years' imprisonment. The court also found that appellant was a sexually violent predator and imposed the lifetime registration obligations under Pennsylvania's version of the statutory scheme popularly known as "Megan's Law," 42 Pa.C.S.A. §§ 9791–9799.9.

On October 11, 2007, appellant timely filed his notice of appeal. On October 17, 2007, the trial court directed appellant to file a concise statement of matters complained of on appeal by November 7, 2007, and on that date appellant timely complied: Appellant's concise statement raised a multitude of issues. Because one of the issues that was raised presented a serious constitutional challenge to Megan's Law, this court certified the appeal for *en banc* review on November 24, 2009.

We write today to specifically address appellant's contention that Pennsylvania's current version of Megan's Law runs afoul of a provision in Pennsylvania's Constitution, found at Article III, Section 3, known

---

1. 18 Pa.C.S.A. §§ 3123, 3125, 3126, 4304, 6301, and 3127, respectively.

as the "single subject rule."[2] As to all of appellant's remaining issues, we affirm on the basis of the trial court's thorough, 15–page opinion that presents the factual background and procedural history of this case, and correctly addresses the remaining issues raised by appellant. We, therefore, adopt that opinion as our own and affirm each of appellant's remaining issues on the respective bases stated in the trial court's opinion. We now turn to the issue of Megan's Law and the single subject rule.

Appellant contends that Senate Bill 92 of the 2003 Session of the Legislature, by which the current Megan's Law provisions were enacted, was constitutionally unsound in that it violated the single subject rule of Article III, Section 3 of the Pennsylvania Constitution:

§ 3.  Form of bills

No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

Pennsylvania Constitution, Article III, Section 3.

According to appellant, Senate Bill 92 violated this precept by addressing wholly disparate topics such as Megan's Law, the Deficiency Judgment Act, and other unrelated matters. We find that the Megan's Law provisions of Senate Bill 92 can pass constitutional muster.

■ We begin our analysis by noting that our supreme court requires a very deferential standard in reviewing constitutional challenges to statutes:

Since the Complaint is based on challenges to the constitutionality of the statute, we must begin by considering the standard by which we resolve constitutional challenges to legislative actions. First, our case law makes clear that there is a strong presumption in the law that legislative enactments do not violate our Constitution. *See Pennsylvania School Boards Ass'n., Inc. et al. v. Commonwealth Ass'n. of School Administrators,* 569 Pa. 436, 805 A.2d 476, 479 (2002). This includes the manner by which legislation is enacted. *Id.* Accordingly, a statute will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violates the Constitution. *Id.* (emphasis supplied). All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. *Commonwealth v. Hendrickson,* 555 Pa. 277, 724 A.2d 315, 317 (1999). Thus, there is a very heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996). It is with this burden and the extremely deferential standard by which we view constitutional challenges in mind that we turn to the arguments of the parties.

*Pennsylvanians Against Gambling Expansion Fund, Inc. et al. v. Commonwealth of Pennsylvania, et al.,* 583 Pa. 275, 292–293, 877 A.2d 383, 393 (2005) (hereinafter referred to as "PAGE ").

■ It is also important to our analysis to recognize the reasons that the single subject rule was adopted, and the legislative problems that it avoids. First, the single subject rule curbs the legislative practice known as "logrolling," which is combining into one bill a variety of distinct subjects which could not obtain a majority on their own, but which can in their amal-

**2.** Because the Commonwealth is a party to this case, appellant was not required to give notice to the Attorney General of this appeal's constitutional challenge. *See* Pa.R.A.P. Rule 521, 42 Pa.C.S.A.

gamation. *City of Philadelphia v. Commonwealth of Pennsylvania*, 575 Pa. 542, 574–575, 838 A.2d 566, 586 (2003). Second, the single subject rule prohibits hiding what might be unpopular legislation, by attaching a rider to an otherwise popular bill that is likely to pass. *Id.* Third, a bill addressing a single subject is more likely to receive a considered review than one covering many topics. *Id.*

Finally, our supreme court has also cautioned about the tension in these single subject challenges between interpreting the rule too narrowly and too broadly:

> While recognizing the importance of Section 3, we acknowledged that bills are frequently subject to amendments as they proceed through the legislative process and not every supplementation of new material is violative of the Constitution. Thus, "where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise 'germane' to the bill's subject as reflected in its title," the requirements of Article III, Section 3 are met. *Id.* Article III, Section 3 must have, however, some limits on germaneness, for otherwise virtually all legislation-no matter how diverse in substance-would meet the single-subject requirement, rendering the strictures of Section 3 nugatory. As stated by our Court in *Payne v. School Dist. of Coudersport Borough*, 168 Pa. 386, 31 A. 1072, 1074 (1895), "no two subjects are so wide apart that they may not be brought into a common focus, if the point of view be carried back far enough." Thus, defining the constitutionally-valid topic too broadly would render the safeguards of Section 3 inert. Conversely, the requirements of Section 3 must not become a license for the judiciary to "exercise a pedantic tyranny" over the efforts of the Legislature. *City of Philadelphia*, 838 A.2d at 588 (citing *Estate of Rochez*, 511 Pa. 620, 515 A.2d 899, 902 (1986)). Indeed, "[f]ew bills are so elementary in character that they may not be subdivided under several heads...." *Payne*, 31 A. at 1074.

*PAGE*, 583 Pa. at 296, 877 A.2d at 395–396.

A review of recent decisions, beginning with those we have already cited, may give us a better idea as to how broadly we should focus our inquiry. In *PAGE*, our supreme court examined House Bill 2330 of 2004, which began its legislative life at a single page in length and dealt solely with the State Police performing criminal history and fingerprint checks for the State Harness and Horse Racing Commission of applicants for licensure. Thereafter, the bill underwent substantial amendments. Subsequently, the bill:

> included the creation of the Pennsylvania Gaming Control Board ("Gaming Control Board" or "Board"), the issuance of gambling licenses authorizing the creation of a variety of slot machine casinos, the generation and distribution of revenues from the licenses, the creation of numerous funds including the Gaming Fund, the Pennsylvania Horse Race Fund, the Gambling and Economic Development and Tourism Fund, the Property Tax Relief Fund as well as a Compulsive and Problem Gambling Treatment Fund. Additionally, the amended bill contained a chapter regarding administration and enforcement and provided for exclusive jurisdiction in our Court regarding disputes over the issuance of licenses and challenges to the Gaming Act.

*Id.*, 583 Pa. at 289–290, 877 A.2d at 392. Ultimately, our supreme court held that such amendment did not violate the single subject rule because the disparate provisions of the bill were unified by the single

overarching subject of the regulation of gaming.

In *City of Philadelphia,* however, the court reached a different conclusion in examining Senate Bill 1100 of 2002. The bill sought to amend Title 53 (Municipalities Generally) of the Pennsylvania Consolidated Statutes. Although the bill concerned various problems of municipalities, it addressed such divergent topics as restricting the political activity of police officers, authorizing parking authorities to undertake mixed-use development projects, imposing citizenship requirements for board members of business improvement districts, and transferring authority over Philadelphia's taxis and limousines from the Public Utility Commission to the Philadelphia Parking Authority. The court found that the proposed unifying relationship that all provisions related to "municipalities" was overbroad to qualify for single subject status. The court also found that the fact that all of the provisions amended a single statutory Title, Title 53, was of little constitutional importance. Finally, the court ruled that the bill did not qualify for the Article III, Section 3 exception for a consolidation or codification of law, because the proposed changes went beyond what was necessary to effect either of those ends.

The Commonwealth Court has also pondered the question of when a proposed relationship is overbroad. In *Fumo v. Pennsylvania Public Utility Commission,* 719 A.2d 10 (Pa.Cmwlth.1998) (plurality decision), the court considered House Bill 1509 of 1995. House Bill 1509 was originally two pages in length and proposed changes to the Public Utility Code by increasing the number of years that a taxicab could be in operation. When the bill reached the Senate, however, that body amended the legislation by adding 84 pages of amendments seeking deregulation of the generation of electricity. Ultimately, the court ruled that the single subject rule was not violated because all of the provisions of the bill affected the regulation of public utilities and the Public Utility Code.

On the other hand, in *DeWeese v. Weaver,* 824 A.2d 364 (Pa.Cmwlth.2003), the court reviewed Senate Bill 1089 of 2001, which provided for the DNA testing of certain offenders, re-established the state DNA bank, and detailed the duties of the State Police in that regard, but also contained provisions amending the law of comparative negligence as to joint and several liability. The court rejected the proposed overarching relationship that the disparate provisions were all amendments to the Judicial Code and pertained to "the business of the courts." The court quoted the supreme court's definition of subject in rejecting the claim:

> For purposes of Article III, Section 3, our Supreme Court has defined "subject" as follows:
>
>> [t]hose things which have a "proper relation to each other," which fairly constitute parts of a scheme to accomplish a single general purpose, "relate to the same subject" or "object." And provisions which have no proper legislative relation to each other, and are not part of the same legislative scheme, may not be joined in the same act.
>
> *Payne v. School District of Borough of Coudersport,* 168 Pa. 386, 31 A. 1072 (1895). Stated otherwise, each subject in an act must be "germane" to the other subjects in an act. *Yardley Mills Co. v. Bogardus,* 321 Pa. 581, 185 A. 218 (1936).
>
> We cannot say that requiring DNA samples from incarcerated felony sex offenders bears a "proper relation" to joint and several liability for acts of

negligence. The claim that the two subjects relate to judicial procedure is a reach. While expungement of a DNA record may arguably relate to the "business of the courts," Chapter 47's main purpose is to assist in the investigation and apprehension of criminals. The germane standard is not a high one, but Act 57 [Senate Bill 1089 of 2001] does not satisfy it.

*DeWeese*, 824 A.2d at 369–370.

Furthermore, in rejecting the notion that the single subject rule was not violated because all the provisions were amendments to a single code, the Judicial Code, *DeWeese* specifically distinguished *Fumo*, which had found that the single subject rule had not been violated where all of the provisions pertained to the Public Utility Code:

> The fact that the changes in substantive law effected by Act 57 were set forth as amendments to the Judicial Code does not, in and of itself, satisfy the requirements of Article III, Section 3. Even Respondent acknowledges that *Fumo* did not establish the absolute principle that a bill addressing two parts of a single codified statute will always satisfy Article III, Section 3. The amendments at issue in *Fumo* were to existing provisions of the Public Utility Code. Here, we deal with the first time placement of a previously stand alone statute, the DNA Act, into the Judicial Code in addition to amendments to Chapter 71 of the Judicial Code.

*DeWeese*, 824 A.2d at 370 (footnotes omitted). With these several considerations in mind, we turn to our analysis of the bill before us.

■ Senate Bill 92 went through five iterations. In its initial form, Senate Bill 92 was simply an amendment to the Deficiency Judgment Act. *See* Senate Bill 92, Printer's No. 91. In its second embodi-

ment, a major amendment to the Landlord and Tenant Act of 1951 was added, changing the focus of the bill entirely. A minor amendment to the Municipal Police Education and Training Law was also included. *See* Senate Bill 92, Printer's No. 1105. The third incarnation of Senate Bill 92 was merely a corrective reprint, and the fourth version made only minor changes. *See* Senate Bill 92, Printer's Nos. 1106 and 1614, respectively. However, in its fifth and final form, the bill was again transformed. The entire provisions pertaining to Megan's Law were added, the entire provisions pertaining to the Landlord and Tenant Act of 1951 were deleted, some statutes of limitation were added, and Senate Bill 92 was completely re-focused. *See* Senate Bill 92, Printer's No. 1995.

A review of the final version of Senate Bill 92 quickly reveals its main subject. Senate Bill 92, Printer's No. 1995, is nearly 60 pages in length. The Megan's Law amendments are both the opening and the concluding provisions, and on the basis of pages, comprise nearly 60% of the bill. The next largest section of Senate Bill 92, Printer's No. 1995, is the deleted Landlord and Tenant Act amendments which log in at nearly 20% of the pages. The Deficiency Judgment Act amendments comprise only 12% of the total. Clearly, the focus of Senate Bill 92 was the Megan's Law amendments.

Thus, we are presented with the question of whether some overarching relationship exists between Megan's Law and the Deficiency Judgment Act, that is not too broad so as to offend the single subject rule. The trial court attempted to find common ground by holding that since all of the changes enacted by Senate Bill 92 affected only Title 42 of our statutes, they were sufficiently related on that basis to satisfy the single subject rule. Unfortunately, we recall that our supreme court

held in *PAGE* that otherwise unrelated subjects affecting only one statute Title holds little constitutional importance in regard to the single subject rule. We sympathize with the trial court because we likewise can find little relationship between these two areas of law. The closest relationship that we can fashion is that the two provisions each supply the citizens of Pennsylvania with protection from predators; sexual predators pursuant to Megan's Law, and credit predators under the Deficiency Judgment Act. Obviously, even this is overly broad.[3]

The Commonwealth, on the other hand, suggests that the disparate sections of Senate Bill 92 all pertain to the single subject of civil remedies. We likewise find that the Commonwealth's formulation is too broad. We are reminded that any two subjects can be linked if the category is made inclusive enough. We reiterate what our supreme court has often stated in these cases. "[N]o two subjects are so wide apart that they may not be brought into a common focus, if the point of view be carried back far enough." *Spahn v. Zoning Board of Adjustment*, 602 Pa. 83, 110, 977 A.2d 1132, 1148 (2009). Such broad groupings, however, only serve to defeat the purpose of the single subject rule, rather than insure that its ends are satisfied. We can only conclude that Senate Bill 92 violates the single subject rule.

■ Nonetheless, *PAGE* indicates that the Megan's Law provisions may yet be preserved. In *PAGE*, our supreme court ruled that where a bill violates the single subject rule, the extraneous, unconstitutional provisions may be severed so as to preserve the main subject of the bill as constitutional.[4] We find that, clearly, the centerpiece of Senate Bill 92 was the Megan's Law provisions. The bill began and concluded with Megan's Law, and Megan's Law supplied the vast majority of the bill's provisions. Moreover, in consideration of 1 Pa.C.S.A. § 1925, we find that the disparate provisions of Megan's Law and the Deficiency Judgment Act, as well as the sundry other minor matters contained in Senate Bill 92, are not essentially and inseparably connected, and that the Megan's Law provisions, standing alone, are complete and capable of being executed in accordance with the legislative intent.

Hence, incorporating the cautionary mandate of *PAGE*, to-wit, keeping in mind

**3.** Moreover, it fails to harmonize the remaining minor subjects of Senate Bill 92, pertaining to various, unrelated statutes of limitations and the municipal police jurisdiction statute.

**4.** We note that the Act in question in *PAGE* contained a severability clause that declared that unconstitutional provisions should be severed. Senate Bill 92 does not contain such a severability clause. However, a severability clause is not necessary to sever unconstitutional provisions from an Act so as to preserve the remainder; rather, the unconstitutional provisions may be severed pursuant to the Statutory Construction Act:

§ 1925. Constitutional construction of statutes

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S.A. § 1925. *See also Commonwealth v. Mockaitis*, 575 Pa. 5, 28–30, 834 A.2d 488, 502–503 (2003).

the trepidation with which the judiciary interferes with the process by which the General Assembly enacts the laws, we conclude that as a matter of law, there was a single unifying subject to which most of the provisions of the act are germane, the regulation of sexual predators. We conclude, however, that the other provisions of Senate Bill 92 are not germane to this single subject. Therefore, according to the Statutory Construction Act, as well as case law such as *PAGE* and *Mockaitis*, the extraneous provisions of Senate Bill 92 are stricken as violative of Article III, Section 3 of the Pennsylvania Constitution.

■ Accordingly, having found that we may sustain Megan's Law in its entirety, and having further found that the trial court correctly resolved the remaining issues raised by appellant on appeal, we will affirm the judgment of sentence below.[5]

Judgment of sentence affirmed.

GANTMAN, J. concurs in the result.

DONOHUE, J., files a Concurring and Dissenting Opinion which is joined by LAZARUS, J.

## CONCURRING AND DISSENTING OPINION BY DONOHUE, J.:

I concur in the result reached by the Majority affirming the decision of the trial court. With regard to the challenge to the constitutionality of Megan's Law III under the single purpose clause of Article III, Section 3 of the Pennsylvania Constitution, I would affirm the trial court because I believe that Appellant has waived the issue

in this court for failure to develop an argument against the constitutionality of S.B. 92. Moreover, the Appellant does not even articulate a reason why the trial court's specific reconciliation of S.B. 92 and the single purpose clause of the Pennsylvania Constitution was in error. Having failed to do so, the issue in my view is waived and the Appellant's judgment of sentence should be affirmed based on the trial court's opinion.[1] Further, for the reasons discussed later, I dissent from the Majority's decision to reach the constitutional issue in general and the severability of certain sections of S.B. 92, in specific.

The pertinent issue as presented by the Appellant states: "The Legislature Has Violated Article III, Section 3 by Enacting Bills That Contain More Than One Subject." Appellant's Brief at 32. The three page argument proceeds with a recitation of Article III, Section 3, *id.*, and the following argument, which is set forth in its entirety:

> The Pennsylvania Supreme Court recently explained that this section was intended to "place restraints on the legislative process and encourage an open, deliberative and accountable government." *City of Philadelphia and John F. Street v. Commonwealth of Pennsylvania, et al.* [575 Pa. 542] 838 A.2d 566, 585 (2003). It noted that "a bill addressing a single topic is more likely to obtain a considered review than one addressing many subjects." *Id.* at 586 [838 A.2d 566]. The test developed to determine whether a bill with multiple subjects should pass the "one subject" rule is

---

5. While we are affirming the trial court's decision as to the constitutionality of Megan's Law, our rationale differs. We note that an appellate court may affirm a lower court's decision on any basis. *Commonwealth v. Lauro*, 819 A.2d 100 (Pa.Super.2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003).

1. I concur in the decision of the Majority affirming the trial court on the remaining issues raised on appeal based on the opinion of the trial court. . To the extent that such affirmance in a published opinion by this court renders the trial court opinion precedential, I dissent from that result.

whether "the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise 'germane' to the bill's subject as reflected in its title." *Id.*

*Id.* The next paragraph, consisting of thirteen lines, sets forth the history of the passage of S.B. 92. *Id.* and *id.* at 33. The following five paragraphs, which is more than half of the section of the brief dedicated to the Article III, Section 3 claim, recites the history of S.B. 390 (Megan's Law II). *Id.* and *id.* at 34. The Appellant's argument concludes as follows:

> For these reasons it would be appropriate to rule that the bills that enacted Megan's Law II and III are in violation of the single subject rule. They should be declared unconstitutional in violation of Article III, Section 3. *But see, Commonwealth v. Rhoads,* 836 A.2d 159, 163 (Pa.Super.2003)(rejecting one subject claim on Megan's Law II).

*Id.* at 34. Notably absent from the "argument" is a statement of any reason why S.B. 92 violates the single subject rule.

The trial court, burdened with the same type of briefing as presented here, cogently recognized that Appellant's Concise Statement of Matters Complained of on Appeal appeared to copy similar pleadings filed in Megan's Law challenges in sister jurisdictions. Trial Court Opinion, 10/11/07, at 6. The trial court's observation is duly noted and could explain the reason why the Appellant's brief in the trial court and appellate brief in this Court (filed on June 12, 2008), does not reference our Supreme Court's most recent, exhaustive decision on Article III, Section 3, *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth of Pennsylvania,* 583 Pa. 275, 877 A.2d 383 (Pa.2005).

"Our case law makes clear that there is a strong presumption in the law that legislative enactments do not violate our Constitution." *Id.* at 292, 877 A.2d at 393. This court will find a statute unconstitutional "only if the Appellant convinces us" that the statute "clearly, palpably and plainly" violates the Constitution. *Commonwealth v. Thur,* 906 A.2d 552, 560–561 (Pa.Super.2006), *appeal denied,* 596 Pa. 745, 946 A.2d 687 (2008). In my view, the "clear, palpable and plain" standard for a constitutional challenge presupposes an especially thorough and developed argument on appeal.

We have repeatedly found waiver on issues on appeal where the Appellant neither offers citation to authority nor develops an argument in support of the claim. *See, e.g., Commonwealth v. Brown,* 741 A.2d 726, 734 (Pa.Super.1999) (and cases cited therein), *appeal denied,* 567 Pa. 755, 790 A.2d 1013 (2001); *Commonwealth v. Hartzell,* 988 A.2d 141, 145 (Pa.Super.2009), *appeal denied,* —— Pa. ——, 996 A.2d 1067 (2010). While Appellant in the case at bar offers a citation to one authority to mount his constitutional challenge, he does nothing to connect the authority to an argument against the constitutionality of S.B. 92. Appellant offers no argument to convince us that S.B. 92 clearly, palpably and plainly violates the single subject requirement of Article III, Section 3 of our Constitution. The Appellant instead leaves it in the hands of this Court to develop his argument. We have repeatedly held that it is not our role to develop arguments for parties. *See, e.g., Commonwealth v. Beshore,* 916 A.2d 1128, 1140 (Pa.Super.2007), *appeal denied,* 603 Pa. 679, 982 A.2d 509 (2009). In my view, the most egregious example of Appellant's failure in this regard is that he does not attempt to mount an argument against the trial court's finding that the provisions of S.B. 92 were related and germane to the single subject of amendments to Title 42 of the Pennsylvania Consolidated Statutes.

Trial Court Opinion at 17. While I might agree with the Majority that this rationale is too encompassing to pass muster, the Appellant never challenges this finding by the trial court and in my view, Appellant's failure in this regard requires affirmance of the trial court on the issue based on waiver.

While I am in agreement with the esteemed Majority's recitation of the maxim that we can affirm the decision of the trial court for reasons other than those relied on by the trial court, our first line of inquiry is to determine whether the issue has been properly preserved on appeal. For the reason stated, namely abject failure to develop any argument, I would find the issue waived by Appellant.

Assuming there will be another challenge to S.B. 92,[2] I would save for another day and adequate appellate advocacy a decision on the constitutionality of S.B. 92 under Article III, Section 3. While it is clear that Appellant developed no argument against the bill's constitutionality, this court was likewise presented with no cogent argument as to why S.B. 92 does not violate the single purpose clause of Article III, Section 3. The Attorney General was not put on notice of this appeal. The District Attorney of the forum county presented the position of the Commonwealth. Appellee's original brief in this court attached the opinion of the trial court and asked this court to adopt it. Original Brief of Appellee at 2.[3] As noted previously, the trial court offered a one sentence rationale for finding S.B. 92 not violative of the single purpose requirement. On reargument, the Appellee submitted a supplemental brief again relying on the trial court's opinion and presented a one page argument reciting the title of S.B. 92 and offering, in one paragraph, that there was no evidence that the legislation's original purpose changed, that the legislature was confused, or that it did not receive reasonable notice as to the statute. The Commonwealth offered one citation to authority for all of these propositions: *Christ the King Manor v. DPW*, 911 A.2d 624 (Pa.Cmwlth.2006), *affirmed*, 597 Pa. 217, 951 A.2d 255 (2008). Appellee's Additional Brief at 1–2. The snippets of arguments are a conglomeration of Article III, Section 3 challenges, including the single purpose requirement, the clear expression of title provision, and the prohibition against the change in original purpose of legislative enactments. *See generally id.*

Importantly, no argument was presented on the issue of severability of portions of S.B. 92 including whether severance was necessary and if so, what sections should be severed. While I agree with the Majority that severance is a permissible tool to save the sections of a statute germane to the single purpose, I firmly believe that when a court engages in this drastic remedy, it should be guided by thoughtful advocacy and an understanding of the repercussions of such severance. While the repercussions may not alter a decision to sever, the public in general and the legal community in specific, should at the very least be apprised in an opinion from this court as to the effects of the severance ruling.

---

2. S.B. 92 was enacted on November 24, 2004. All but two provisions dealing with residence verification under Megan's Law III (42 Pa. C.S.A. 9796(a) and (b)) were effective within 180 days of enactment. More than five years later, the case at bar presents the first Article III, Section 3 challenge to S.B. 92.

3. I do not fault the Appellee in this regard because the Appellant did not challenge the trial court's rationale.

The result reached by the Majority has the effect of declaring the severed statutory provisions unconstitutional. *Pennsylvanians Against Gambling*, 583 Pa. at 309–10, 877 A.2d at 404 (unless inseparable, unconstitutional provisions should be severed from their constitutional counterparts; provisions violative of single subject requirement are stricken for lack of germaneness to single subject). The provisions the Majority strikes from S.B. 92 set statutes of limitations in certain asbestos cases[4] and detailed and comprehensive procedures in deficiency judgment actions.[5] These provisions have been in effect since November 24, 2004, and a declaration of unconstitutionality of a statute has retroactive effect. *Commonwealth v. Muhammed*, 992 A.2d 897, 903 (Pa.Super.2010). As a result of the Majority's decision here, they are unconstitutional for any purpose; "it is if they were never enacted." *Glen–Gery Corp. v. Zoning Hearing Board of Dover Twp.*, 589 Pa. 135, 152, 907 A.2d 1033, 1043 (2006) (citations omitted). What repercussions will result from the Majority decision are unknown to this Court because we did not have the benefit of advocates' insight on these issues. The learned Majority is technically correct that since the Commonwealth was a party to this appeal, notice to the Attorney General was not necessary. (Maj. Op. at 355 n. 2). *Commonwealth v. Balog*, 448 Pa.Super. 480, 672 A.2d 319, 321, appeal denied, 545 Pa. 660, 681 A.2d 176 (1996); cert. denied, 519 U.S. 1129, 117 S.Ct. 987, 136 L.Ed.2d 869 (1997). However, the absence of the Attorney General, or any amicus curiae with an informed perspective on S.B. 92 or an interest in preserving all of the sections of the legislative enactment, significantly hampered our review.

Moreover, the parties to this appeal have no obvious interest in the subject matter of the severed provisions. Thus an opportunity for our Supreme Court to review this case on a petition for allowance of appeal is questionable. Since I believe that the question of the constitutionality of S.B. 92 was waived by the Appellant, I would not reach the thorny issue of severability. Accordingly, I respectfully dissent from that portion of the Majority opinion in specific and the decision reaching the Article III, Section 3 constitutional issue in general.[6]

---

**4.** 42 Pa.C.S.A § 5524.1.

**5.** 42 Pa.C.S.A. § 8103(a), (b), (c)(3), and (5)(e) and (g); 42 Pa.C.S.A. § 8103(f.1), (f.2) and (g).

**6.** Because I would decide this case based on the trial court's opinion and find waiver of the Article III, Section 3 claim, I believe this case should be a non-precedential decision governed by Superior Court Internal Operating Procedure § 65.37.