934 A.2d 1249

CASINO FREE PHILADELPHIA, The Multi–Community Alliance, Barbara Dowdall, Georjean Brinkley, Neighbors Allied For The Best Riverfront, Joanne and Paul Sherman, Edward Verrall, Northern Liberties Neighbors Association, Deborah Rudman, R & K Standard, Inc. d/b/a Standard Tap and Manpants, LLC d/b/a Johnny Brenda's Tavern, Petitioners

v.

PENNSYLVANIA GAMING CONTROL BOARD, Respondent

and

HSP Gaming, LP, Intervenor.[1]

Supreme Court of Pennsylvania.

Submitted June 26, 2007.

Decided Nov. 21, 2007.

1. Petitioners also named Governor Edward G. Rendell as a respondent. We directed that Governor Rendell be dismissed as a party to this action by the order dated 5/10/2007. Accordingly, Governor Rendell's name does not appear in the caption of this opinion.

John James Grogan, Irv Ackelsberg, Langer & Grogan, P.C., Philadelphia, for Casino Free Philadelphia, petitioner.

Kenneth Scott Roy, Office of Gen. Counsel, Howard Greeley Hopkirk, PA Office of Atty. Gen., for the Com. of PA, et al., respondents.

Francis T. Donaghue, PA Gaming Control Bd., for PA Gaming Control Bd., respondent.

Stephen David Schrier, Obermayer Rebmann Maxwell & Hippel, L.L.P., Cherry Hill, NJ, for Philadelphia Entertainment and Development Partners, L.P., amicus curiae.

Jennifer M. McHugh, Stephen A. Cozen, F. Warren Jacoby, Cozen O'Connor, West Conshohocken, for HSP Gaming, L.P., participant.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Chief Justice CAPPY.

This matter raises a challenge to a subsection of the Pennsylvania Race Horse Development and Gaming Act ("Gaming

Act"), 4 Pa.C.S. § 1101 *et seq.* Petitioners filed an Application for Leave to File Petition in the Nature of a Complaint Seeking Declaratory Judgment and Injunctive Relief ("Application").[2] Via an order dated May 10, 2007, we directed that this matter be submitted on briefs. For the reasons that follow, we deny Petitioners' request for injunctive relief as moot and deny their request for declaratory relief on its merits.

Petitioners are civic organizations, businesses and individuals who either reside or conduct business in Philadelphia. Petitioners specifically note that they are not challenging any particular decision of the Gaming Control Board ("Board"). *See* Petitioners' Brief at 2.[3] Rather, they launch a facial constitutional challenge against 4 Pa.C.S. § 1102. Accordingly, this matter arises in this Court's original jurisdiction. 4 Pa.C.S. § 1904 (Pennsylvania Supreme Court has exclusive jurisdiction "to hear any challenges to or to enter a declaratory judgment concerning the constitutionality of [the Gaming Act].")

**2.** In their Application, Petitioners requested that we grant injunctive relief in the nature of staying the Gaming Control Board's decision-making process with regard to Class 2 licenses, licenses that authorize the placement and operation of slot machines in stand-alone facilities. *See* 4 Pa.C.S. § 1304. Shortly after Petitioners filed their Application, and prior to our order directing that this matter be submitted on briefs, the Gaming Control Board issued its Adjudications with regard to all Class 2 licenses in the Commonwealth. Accordingly, Petitioners' request that we enjoin the Gaming Control Board from issuing any determinations with regard to the Class 2 licenses is denied as moot.

**3.** Even though Petitioners commence their brief by observing that this is a facial challenge and that they are not attacking the propriety of any particular decision, they disregard that limitation in subsequent portions of their brief. Throughout their brief, Petitioners raise specific challenges to various Board decisions. *See, e.g.,* Petitioners' brief at 8–9 (arguing that in awarding a Philadelphia gaming license to Sugar-House, the Board acted improperly when it "did not make any specific findings regarding the potential negative ..., nor did it make any explicit comparisons between the proposals regarding the factors relating to such negative social effects...."); Petitioner's brief at 14, 15–16 nn. 3 and 4 (asserting that Board failed to consider social effects in awarding Philadelphia gaming licenses). Such case-specific challenges are inappropriate in a declaratory judgment matter that raises a facial constitutional challenge. Accordingly, we will not address these arguments.

Petitioners' constitutional challenge to 4 Pa.C.S. § 1102 [4] does not encompass the entirety of that provision but rather

4. 4 Pa.C.S. § 1102 provides that:

The General Assembly recognizes the following public policy purposes and declares that the following objectives of the Commonwealth are to be served by this part:

(1) The primary objective of this part to which all other objectives and purposes are secondary is to protect the public through the regulation and policing of all activities involving gaming and practices that continue to be unlawful.

(2) The authorization of limited gaming by the installation and operation of slot machines as authorized in this part is intended to enhance live horse racing, breeding programs, entertainment and employment in this Commonwealth.

(3) The authorization of limited gaming is intended to provide a significant source of new revenue to the Commonwealth to support property tax relief, wage tax reduction, economic development opportunities and other similar initiatives.

(4) The authorization of limited gaming is intended to positively assist the Commonwealth's horse racing industry, support programs intended to foster and promote horse breeding and improve the living and working conditions of personnel who work and reside in and around the stable and backside areas of racetracks.

(5) The authorization of limited gaming is intended to provide broad economic opportunities to the citizens of this Commonwealth and shall be implemented in such a manner as to prevent possible monopolization by establishing reasonable restrictions on the control of multiple licensed gaming facilities in this Commonwealth.

(6) The authorization of limited gaming is intended to enhance the further development of the tourism market throughout this Commonwealth, including, but not limited to, year-round recreational and tourism locations in this Commonwealth.

(7) Participation in limited gaming authorized under this part by any licensee or permittee shall be deemed a privilege, conditioned upon the proper and continued qualification of the licensee or permittee and upon the discharge of the affirmative responsibility of each licensee to provide the regulatory and investigatory authorities of the Commonwealth with assistance and information necessary to assure that the policies declared by this part are achieved.

(8) Strictly monitored and enforced control over all limited gaming authorized by this part shall be provided through regulation, licensing and appropriate enforcement actions of specified locations, persons, associations, practices, activities, licensees and permittees.

(9) Strict financial monitoring and controls shall be established and enforced by all licensees or permittees.

(10) The public interest of the citizens of this Commonwealth and the social effect of gaming shall be taken into consideration in any decision or order made pursuant to this part.

(11) It is necessary to maintain the integrity of the regulatory control and legislative oversight over the operation of slot machines in this Commonwealth; to prevent the actual or appearance of corruption

focuses on Section 1102(10). This subsection states that "[t]he public interest of the citizens of this Commonwealth and the social effect of gaming shall be taken into consideration in any decision or order made pursuant to this part." Petitioners assert that this subsection violates Article II, § 1 of the Pennsylvania Constitution ("the anti-delegation clause"). The anti-delegation clause provides that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1. Petitioners claim that Section 1102(10) violates this constitutional provision because the Legislature did not include any standards by which the Board is to evaluate the social effects of gaming.

In support of this argument, Petitioners rely heavily on our decision in *Pennsylvanians Against Gambling Expansion Fund v. Commonwealth*, 583 Pa. 275, 877 A.2d 383 (2005) ("*PAGE*"). *PAGE*, in pertinent part, considered a constitutional challenge to 4 Pa.C.S. § 1506. At the time *PAGE* was decided, Section 1506 provided that the siting of a gaming facility

> shall not be prohibited or otherwise regulated by any ordinance, home rule charter provision, resolution, rule or regulation of any political subdivision or any local or State instrumentality or authority that relates to zoning or land use to the extent that the licensed facility has been approved by the board.

4 Pa.C.S. § 1506. Petitioners in *PAGE* argued that Section 1506 constituted a violation of the anti-delegation clause because it did not provide guidance to the Board as to how the Board was to make zoning determinations. The Board, which was a respondent in *PAGE*, countered that the policies and objectives listed by the Legislature in 4 Pa.C.S. § 1102 as well as standards provided in other sections in the Gaming Act sufficiently funneled the Boards discretion with regard to zoning. *PAGE*, 877 A.2d at 416–17. We rejected the Boards

> that may result from large campaign contributions; ensure the bipartisan administration of this part; and avoid actions that may erode public confidence in the system of representative government.

argument. While we acknowledged that "the eligibility requirements and additional criteria guide the Board's discretion in determining whether to approve a licensee, we find that they do not provide adequate standards upon which the Board may rely in considering the local zoning and land use provisions for the site of the facility itself." *Id.* at 419. We thus declared 4 Pa.C.S. § 1506 to be unconstitutional and severed it from the Gaming Act. We also observed that this declaration of unconstitutionality "is obviously without prejudice to the Legislature's ability to cure the defects, via subsequent amendments that are consistent with this opinion." *Id.*[5]

*PAGE*, in turn, built on a long line of cases interpreting the anti-delegation clause. One of the seminal decisions with regard to this area of the law is *Blackwell v. State Ethics Comm'n,* 523 Pa. 347, 567 A.2d 630 (1989). In *Blackwell,* we stated that "the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority." *Blackwell,* 567 A.2d at 636. "While the General Assembly may, with adequate standards and guidelines, constitutionally delegate the power and authority to execute or administer a law, the prohibition against delegation of 'legislative power' requires that the *basic policy choices* be made by the General Assembly." *Id.* at 637 (emphasis in the original). *Blackwell* spoke in terms of "*basic policy choices*". The decision in no fashion required the Legislature to provide a detailed how-to manual within each and every legislative act.

Petitioners argue that Section 1102(10) provides no guidance to the Board. Thus, they assert, per *PAGE*, we should strike Section 1102(10) as violative of the anti-delegation clause. We reject this argument and find that Section 1102 does not

---

5. Subsequent to *PAGE*, the Legislature amended Section 1506. *See* Act 2006–135, amendment effective November 1, 2006. In their brief to this Court, Petitioners seem to argue that we should now invalidate the amended Section 1506. Apparently, Petitioners believe that the Legislature failed to comply with our *PAGE* directives when it amended Section 1506 and would have us declare the second version of that statute in violation of Article II, § 1 of the Pennsylvania Constitution. Petitioners raised no constitutional challenge to Section 1506 in their Application; accordingly, we will not address this putative issue.

violate the anti-delegation clause. Petitioners, by isolating the "social effect" language from the rest of Section 1102, attempt to portray the Legislature as having given scant direction to the Board to execute or administer its responsibilities. This blinkered reading of Section 1102 produces a false picture. The statute lists nearly a dozen different policies and objectives that the Board should consider, one of which is the social effect provision; this does not constitute legislation that confers *carte blanche* legislative power on an administrative agency to declare basic policy questions. To the contrary, it shows a significant channeling of discretion. Furthermore, there is nothing in the anti-delegation clause that would require an exhaustive definition of each of these eleven purposes and objectives. The Legislature is not constitutionally required to micromanage the administrative agencies it creates.

In addition, we do not find that *PAGE* in particular offers support for Petitioners position. *PAGE* did not herald a new, broader reading of the anti-delegation clause. Rather, it represented an application of an established standard, namely, that basic policy choices must be made by the Legislature. In *PAGE*, it was not simply that an isolated phrase or subsection of the zoning provision was ill-defined; instead, the entire zoning provision was particularly amorphous. Furthermore, *PAGE* in no fashion opened the door to anti-delegation clause attacks on the Gaming Act in particular. In fact, we clearly limited *PAGE*. As stated *supra*, the *PAGE* Court considered the Board's argument that provisions such as Section 1102 provided sufficient guidance to the Board's Section 1506 decision making process. We agreed in a limited fashion with the Board's argument, stating that indeed *"the eligibility requirements and additional criteria guide the Board's discretion* in determining whether to approve a licensee...." *PAGE*, 877 A.2d at 419 (emphasis supplied). Yet, the *PAGE* Court found that the guidance provided in Section 1102 and other provisions could not save the wholly separate zoning provision of Section 1506 from violating the anti-delegation clause. *Id.* Such language certainly does not serve as an indication that

the Gaming Act is rife with violations of the anti-delegation clause.

Accordingly, Petitioners' request for injunctive relief is denied as moot and Petitioners' request for a declaration that 4 Pa.C.S. § 1102(10) is unconstitutional is denied.

Justices CASTILLE, EAKIN and BAER, BALDWIN and FITZGERALD join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR concurring.

I agree with the majority that Section 1102(10) of the Gaming Act, in and of itself, does not represent an unconstitutional delegation of legislative authority. I also agree that various challenges raised by Petitioners are outside the proper scope of the present proceeding invoking this Court's jurisdiction under Section 1904 of the Gaming Act, 4 Pa.C.S. § 1904, which concerns constitutional challenges to provisions of that act. On the non-delegation question, however, my reasoning is as follows.

I regard the social effects of land development as a subset of the concerns of traditional zoning regulation. *See e.g.*, 53 P.S. § 10105 (reflecting the General Assembly's purpose, in enacting a comprehensive Municipalities Planning Code governing, *inter alia*, comprehensive planning and zoning matters, to "protect and promote safety, health and morals"). Thus, I believe that Section 1102(10)'s "social effects" provision, *see* 4 Pa.C.S. § 1102(10), functioned in tandem with the initial legislative scheme investing in the Gaming Control Board the power to supplant local zoning and land use regulations which would affect the location of casinos. However, in light of the decision in *Pennsylvanians Against Gambling Expansion Fund v. Commonwealth*, 583 Pa. 275, 877 A.2d 383 (2005) ("*PAGE*"), which deemed this delegation unconstitutional as conferred, *see id.* at 335, 877 A.2d at 419, the statute may no longer be read as overriding existing local regulation. In my view, a delegation of discretion to select casino locations subject to local zoning and land use regulation is far more

reserved than delegation of power to select locations in spite of local regulation. Thus, I believe that the delegation issue assumes lesser significance in the post-*PAGE* landscape.