[J-1-2016] [MO: Saylor, C.J.]
IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

| | |
|---|---|
| WEST PHILADELPHIA ACHIEVEMENT CHARTER ELEMENTARY SCHOOL, | : No. 31 EM 2014 |
| | : |
| Petitioner | : |
| | : |
| v. | : |
| | : |
| THE SCHOOL DISTRICT OF PHILADELPHIA AND SCHOOL REFORM COMMISSION, | : |
| | : ARGUED: September 9, 2014 |
| Respondents | : RESUBMITTED: January 20, 2016 |

**DISSENTING OPINION**

**MR. JUSTICE BAER**                                    **DECIDED: February 16, 2016**

I respectfully dissent from the majority's holding that Section 6-696(i)(3) of the Distress Law, 24 P.S. § 6-696(i)(3), which grants the School Reform Commission ("SRC") the power to suspend provisions of the Public School Code, constitutes an unlawful delegation of legislative authority in violation of Article II, Section 1 of the Pennsylvania Constitution.[1] In my view, Section 6-696(i)(3) does not delegate legislative power, but rather delegates the authority to suspend legislation that affects the economic stability of a school district in financial distress, which is constitutionally

---

[1] This provision, entitled, "Legislative power," states "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1.

permissible pursuant to Article I, Section 12.[2]  Accordingly, I would reject the constitutional challenge raised by the West Philadelphia Achievement Charter School ("Charter School") and deny the Charter School's request for injunctive relief.

Preliminarily, it is relevant that the Distress Law embodies a comprehensive statutory scheme to preserve school districts that are experiencing a financial crisis by remediating identified types of economic hardship that have resulted from ordinary operating procedures under the Public School Code.  The statute identifies several threshold circumstances and levels of fiscal hardship that trigger the Secretary of Education's ability to issue a certificate declaring a school district in financial distress. 24 P.S. § 6-691.  When a school district of the first class, *i.e.*, the Philadelphia School District, is deemed to be in financial distress the SRC is established to replace the school district's board of directors and assume the latter's powers and duties.  Id. § 6-696(a).  The SRC serves as an instrumentality of the school district to administer the operation, management and educational program of the school district.  Id. § 6-696 (e)(1).

Section 6-696(i) enumerates fourteen specific powers granted to the SRC, which powers continue until the Secretary of Education issues a declaration to dissolve the SRC, purportedly when financial stability has been achieved.  Id. §6-696(e)(1).[3]  An

---

[2] Article I, Section 12, entitled, "Power of suspending laws," states "[n]o power of suspending laws shall be exercised unless by the Legislature *or by its authority*."  PA. CONST. art I, § 12 (emphasis added).

[3] These powers permit, *inter alia*: the appointment of entities needed to conduct necessary fiscal and performance audits; agreements with for-profit or nonprofit organizations to operate one or more schools with funds identified in the agreement; the suspension of requirements governing the establishment of, and facilities for, charter schools; the suspension or revocation of a charter; employing professional and senior management employees without state certification upon the committee's approval of qualifications and salary; the closing or reconstitution of a school; the suspension of (…continued)

additional power enumerated in Section 6-696(i) is the power to suspend provisions of the Public School Code, which is challenged herein. The text of Section 6-696(i)(3) provides as follows:

> In addition to all powers granted to the superintendent by law and a special board of control under section 693 and notwithstanding any other law to the contrary, the School Reform Commission shall have the following powers:
>
>         \*                 \*                 \*
>
> To suspend the requirements of this act and regulations of the State Board of Education except that the school district shall remain subject to those provisions of this act set forth in sections 1073, 1073.1, 1076, 1077, 1078, 1080, 1732-A(a), (b) and (c), 1714-B and 2104 and regulations under those sections.

24 P.S. § 6-696(i)(3).[4]

Reduced to its essence, the Charter School's contention, which the majority adopts, is that Section 6-696(i)(3)'s suspension power is so broad that it delegates legislative power to the SRC in violation of the anti-delegation rule.[5] This premise is

---

(continued…)
professional employees without regard to the section normally governing suspensions; the appointment of managers, administrators, and others to oversee operations of schools; the reallocation of resources, amendment of school procedures, development of achievement plans, and implementation of testing or other evaluation procedures for educational purposes; the negotiation of new collective bargaining agreements; the delegation to a person of powers deemed necessary to carry out the purposes of this article; and the employment of persons to review the financial and educational programs of school buildings and make recommendations to the SRC regarding improvements thereto. See 24 P.S. § 6-696(i).

[4] As discussed infra, the text of this provision addresses only the power to suspend legislation, not create new law, and provides guidance in that it enumerates particular provisions that cannot be suspended and to which the school district shall remain subject.

[5] In presenting its argument to this Court, the Charter School points to specific actions taken by the SRC, suggesting that its quarrel is not with the constitutionality of the
(…continued)

based upon the purported lack of any restraints or standards contained in the statutory language of Section 6-696(i)(3) to guide the SRC's exercise of the suspension power as well as the alleged lack of any means to protect against the arbitrary or *ad hoc* exercise of the SRC's discretion in choosing which statutory provisions to suspend.

Respectfully, I disagree as I believe that the General Assembly, when enacting Section 6-696(i)(3) and the comprehensive statutory scheme of which it is a part, provided adequate standards to guide the SRC's exercise of discretion in determining which provisions of the Public School Code should be subject to the suspension power. I further find there are procedures in the Distress Act that adequately protect against the SRC's arbitrary or *ad hoc* suspension determinations.

My analysis begins with an examination of what constitutes legislative power. Legislative power has been defined as the power "to make, alter, or repeal laws." Blackwell v. State Ethics Comm'n, 567 A.2d 630, 637 (Pa. 1989). Accordingly, "[i]t is axiomatic that the Legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority." Gilligan v. Pennsylvania Horse Racing Commission, 422 A.2d 487, 489 (Pa. 1980) (citing State Bd. of Chiropractic Examiners v. Life Fellowship of Pa., 272 A.2d 478, 480 (Pa. 1971)).

The legislature may, however, constitutionally delegate to another body the authority to execute and administer a law so long as the General Assembly makes the basic policy choices and provides adequate standards and guidelines to allow the other

---

(continued…)
Legislature's delegation of authority, but with how the SRC has exercised the authority granted. In my view, the propriety of the SRC's actions is not properly before this Court as it is not within the scope of our original jurisdiction in this matter; the only question we may decide in this appeal pertains to the constitutionality of Section 6-696(i)(3).

body to carry out those legislative policies. Blackwell, 567 A.2d at 637. Significantly, in reviewing the adequacy of guiding standards incorporated in a law, this Court looks to the law as a whole, considering its purpose and scope, the subject matters covered therein, the duties prescribed and the broad or narrow powers granted. Dauphin Deposit Trust Company v. Myers, 130 A.2d 686, 688 (Pa. 1957).[6] The General Assembly is not required "to provide a detailed how-to manual within each and every legislative act" in order to supply adequate standards, Casino Free Philadelphia v. Pennsylvania Gaming Control Bd., 934 A.2d 1249, 1252 (Pa. 2007), and all details of administration need not be precisely or separately enumerated in the statute. Chartiers Valley Joint Schools v. County Board of School Directors, 211 A.2d 487, 492 (Pa. 1965).

With this jurisprudence in mind, I conclude that Section 6-696(i)(3) is not an unconstitutional delegation of legislative power under Article II, Section 1 as it does not authorize the SRC to make, alter or repeal the law. Rather, Section 6-696(i)(3) constitutes a lawful delegation of the General Assembly's power to suspend laws pursuant to Article I, Section 12 of the Pennsylvania Constitution. See PA. CONST. art. I, § 12 ("No power of suspending laws shall be exercised unless by the Legislature or **its authority**." (emphasis added). While there is superficial appeal to the Charter School's contention that the suspension power is so broad that it effectively enables the SRC to "legislate," a close examination of the challenged provision and the statutory

---

[6] The standards advanced by the Legislature must be sufficiently clear and definite to guide the delegee in the performance of its stated function. Holgate Bros. Co. v. Bashore, 200 A. 672, 674 (Pa. 1938); Bell Tel. Co. of Pennsylvania v. Driscoll, 21 A.2d 912, 915 (Pa. 1941). The standards must also be sufficiently broad to give the delegee some flexibility to deal with the particular problem that the Legislature has asked it to address. See Water & Power Res. Bd., Dep't of Forests & Waters v. Green Springs Co., 145 A.2d 178, 182 (Pa. 1958).

scheme of which it is a part reveals that the SRC is empowered only to suspend those provisions of the Public School Code that result in financial distress to the school district for the limited period during which the economic crisis of the school district continues.[7] Because Section 6-696(i)(3) does not authorize the SRC to legislate by making, altering, or repealing the law, it is not an unconstitutional delegation of legislative power.

By enacting Section 6-696(i)(3) and the Distress Law as a whole, the General Assembly has made the basic policy determination to preserve the failing school district by identifying and remediating sources of financial distress "notwithstanding any other law to the contrary." 24 P.S. § 6-696(i). The SRC does not hold the power over basic policy choices inherent in the Public School Code, but may only exercise its discretion to suspend those provisions that preserve the school district by remediating identified types of financial distress.

I do not believe the Legislature afforded the SRC *carte blanche* powers to suspend any combination of the School Code provisions. The standards guiding the SRC's exercise of discretion in determining which provisions of the Public School Code to suspend appear both in Section 6-696(i)(3) itself, which enumerates several provisions that may not be suspended, as well as in the Distress Law as a whole, which, as noted, makes clear that remediation efforts are aimed at resolving the financial distress of the school district. A suspension of a provision of the Public School Code that is immaterial to the contemplated advancement of financial stability is simply unauthorized. Although the suspension power granted to the SRC is somewhat broad,

---

[7] I appreciate that the Philadelphia School District has been in financial distress for well over a decade, but this fact cannot cloud the constitutional analysis of the challenged statutory language at issue. Stated differently, the SRC's continued inability to achieve economic stability within the school district has no bearing on the constitutionality of the authority granted to the SRC by Section 6-696(i)(3).

it is necessarily so, as the breadth of the standard is driven by the breadth of the problem, and the problem here is unquestionably great. *Accord*. Water & Power Res. Bd., Dep't of Forests & Waters, 145 A.2d at 182. Because the General Assembly can neither predict all causes of refractory distress within such a complex system nor statutorily prescribe precisely how to remedy the effects in all instances, the grant of broad authority is required to effectuate the purposes of the legislation.

Additionally, the Distress Law contains procedures to protect against arbitrary or *ad hoc* decision-making by the SRC. The Distress Law requires the SRC to submit annually a report to the Governor and the Education Committees of both the House of Representatives and the Senate regarding progress made toward improvements in fiscal and academic performance. 24 P.S. § 6-696(n.2). The General Assembly therefore brings to bear a multi-branch review of both the performance of the SRC in abating distress and, ultimately, whether financial distress continues to exist at all. By requiring the SRC to report annually to the Commonwealth's chief executive and the legislative committees, the Distress Law holds the SRC accountable to perform in accordance with the remedial purposes of the Distress Law. Finally, the Distress Law authorizes the Governor to remove a member of the SRC prior to expiration of the term of office upon proof by clear and convincing evidence of malfeasance or misfeasance. Id. § 6-696(b)(2). In my view, the improper exercise of an enumerated power, such as the suspension power, could constitute grounds for removal of SRC members.

In conclusion, I acknowledge that the General Assembly's grant of suspension power to the SRC has vast implications on all charter schools, as well as other individuals and entities involved in public education in the Philadelphia School District. The enormity of the power conveyed and the dramatic effects resulting from exercise of that authority, however, do not render Section 6-696(i)(3) unconstitutional under the

anti-delegation clause where the General Assembly made the requisite basic policy decisions inherent in the legislation and afforded adequate guidance to the SRC in exercising the suspension authority. It cannot be ignored that a party challenging a legislative enactment bears the heavy burden of demonstrating that the statute clearly, palpably, and plainly violates the constitution. Commonwealth v. Payne, 871 A.2d 795, 800 (Pa. 2005). In my opinion, the Charter School has simply failed to satisfy that burden here.

Madam Justice Donohue joins this dissenting opinion.